## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

GARRETT ROLFE,                     §
                                   §
    *Plaintiff*,                  §
                                   §
v.                                 §          Civil Action No. 1:22-cv-02339-MHC
                                   §
PAUL HOWARD et al.                 §
                                   §

## DEFENDANT PAUL HOWARD'S MOTION TO DISMISS AND BRIEF IN SUPPORT

COMES NOW Defendant Paul Howard with this his Motion to Dismiss and Brief in Support of same, showing this Honorable Court as follows:

When analyzed under the pertinent case law, each claim fails substantively and is also barred by the absolute immunity provided to prosecutors. The legal analysis applied to the Complaint's allegations is straightforward and shows that each claim is untenable against Mr. Howard.

### ALLEGATIONS IN THE COMPLAINT[1]

This lawsuit stems from the shooting of a black man by two Atlanta Police Officers on June 12, 2020. The officers involved were Plaintiff and Officer Brosnan. (Cmplt., Doc. 1 ¶ 40). The victim, Rayshard Brooks, was shot in the back as he fled

---

[1] Defendant accepts these allegations as true only for the purposes of this Motion to Dismiss.

1

from the officers. (*Id.* ¶ 38). Brooks had overpowered the officers and had taken a TASER from Brosnan. The TASER was fired twice. One of the TASER shots was made by Brooks, which struck Brosnan in the hand, and another shot missed. (*Id.* ¶ 36). A TASER is only equipped to fire a projectile twice. This means that when Brooks was shot, the TASER could not fire; it could be used only as a handheld stun gun. Thus, as Brooks ran away from Plaintiff, he had a TASER in his possession that could not fire projectiles.[2] As Brooks fled, Plaintiff shot him twice, in the middle of the back and in the buttocks. Brooks died from the wounds.

After reviewing the incident, Howard's Office presented the facts to Fulton Superior Court Judge Rebecca Reider, who signed an arrest warrant for Plaintiff. (*Id.* ¶ 114).

Plaintiff alleges that Howard obtained arrest warrants for the officers "without the benefit of a completed investigation," (*Id.* ¶¶ 100-102, 105), that Howard held a press conference and participated in a talk show where he made false statements about Plaintiff, (*Id.* ¶¶ 106-119), and that Howard was in "direct disobedience" to the Rules of Professional Conduct for attorneys.[3]

Plaintiff brings nine claims against Howard: (1 and 2) Counts One and Seven for unlawful seizure; (3 and 4) Counts Two and Twelve for deprivation of reputational

---

[2] These facts are omitted from the Complaint but have been widely reported by the prosecutors assigned to the case and the media.

[3] A bar complaint was filed against Howard for these precise allegations. Mr. Howard was cleared by the State Bar of Georgia of any wrongdoing.

liberty;[4] (5 and 6) Counts Three and Four for false arrest under federal and state law respectively; (7) Count Five, ratification; (8) Count Eight, conspiracy; and (9) Count Ten conspiracy to violate due process. As will be shown, Plaintiff has failed to state a claim for any of these.

**ARGUMENT AND CITATION TO AUTHORITY**

Plaintiff's claims against Howard lack any basis. The case law illustrates that the claims brought against Howard lack any legal underpinning and each claim fails substantively. Howard is also entitled to prosecutorial immunity. As will be made plain, each of the claims lacks any merit.

## I.   MOTION TO DISMISS STANDARD

In a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court must accept the complaint's factual allegations as true. *Hardy v. Regions Mort., Inc.*, 449 F.3d 1357, 1359 (11th Cir. 2006). To survive Rule 12(b)(6) scrutiny, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly* at 555. "[U]nwarranted deductions of fact in a complaint are not admitted as true for the purposes of testing the sufficiency of [the

---

[4] Count Twelve appears to be duplicative of Count Two.

plaintiff's] allegations". *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005).

*Iqbal* states that, while a court must accept all factual allegations in a complaint as true, it need not accept legal conclusions as true. "Determining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, it has not been shown that the pleader is entitled to relief. *Iqbal* at 679.

The Eleventh Circuit has stated that a complaint must "contain either direct or inferential allegations respecting all material elements necessary to sustain a recovery under some viable legal theory." *Randall v. Scott*, 610 F.3d 701, 716 n. 2 (11th Cir. 2010). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal* at 678.

Throughout the Complaint, there are unsupported conclusory allegations, made only to try to defeat dismissal. But as Iqbal and Twombly show, a naked attempt to state a valid claim is not enough. The Complaint's conclusory statements do not supply the factual support needed to sustain these claims.

## II.    HOWARD IS ENTITLED TO PROSECUTORIAL IMMUNITY

In *Imbler v. Pachtman*, the Supreme Court had the first opportunity to delineate the modern contours of an age-old common-law doctrine.[5] 424 U.S. 409, 420 (1976). The question presented in *Imbler* asked whether prosecutors have absolute immunity for claims arising under § 1983, for acts in furtherance of their prosecutorial duties. 424 U.S. at 430-31. The Court, in an 8-0 opinion,[6] held that a prosecutor enjoys absolute immunity for acts associated with the judicial process. *Id.* The Eleventh Circuit has held that prosecutorial immunity extends to claims for conspiracy. *Smith v. Shorstein*, 217 F. App'x 877, 880-81 (11th Cir. 2007). Binding precedent supports applying the immunity doctrine for every claim that Plaintiff brings based on Howard's decision to seek an arrest warrant. These include the fourth amendment claims (counts one, seven, eight, and ten), ratification (count five), and the false arrest claims (counts three and four).

To decide whether Howard has absolute immunity, the Court must determine whether the allegations concern acts associated with the prosecutorial function. Plaintiff's allegations of wrongdoing are concerned only with Howard's decision to seek an arrest warrant and charge Plaintiff with a crime. (See Doc. 1 ¶¶ 100-102, 170,

---

[5] *See Imbler*, *supra* (stating the doctrine underlying prosecutorial immunity "has roots extending to the earliest days of the common law") (citing *Yates v. Lansing*, 5 Johns. 282 (N.Y. 1810)).
[6] Justice Stevens recused himself from the decision in *Imbler*.

174).[7] Plaintiff's allegations that support the fourth amendment and false arrest claims against Howard are the following: That Howard "pressed forward to obtain criminal charges against Plaintiff without the benefit of a completed investigation," (Doc. 1 ¶ 100), that Howard obtained arrest warrants "[a]fter only watching video recordings of the incident," (*Id.* ¶ 101), and that Howard "abused the authority of his office in bringing charges against Plaintiff without any meaningful investigation."(*Id.* ¶ 102). Plaintiff later alleges that Howard's "actions in securing arrest warrants for Plaintiff without sufficient probable cause constitute unreasonable seizures...," (*Id.* ¶ 238), and that Howard seeking an arrest warrant with the investigators on his staff was a conspiracy to deprive Plaintiff of due process. (*Id.* ¶¶ 244, 285).

### A. Every Act Alleged of Howard was in the Scope of his Prosecutorial Duties.

Courts use the "functional approach" to determine whether a prosecutor is entitled to absolute immunity. *Rivera v. Leal*, 359 F.3d 1350, 1353 (11th Cir. 2004). This approach looks to "the nature of the function performed..." *Id.* One of the quintessential prosecutorial functions is the "initiation and pursuit of criminal prosecutions," *Rivera*, 359 F.3d at 1353, and "other actions that are intimately associated with the judicial phase of the criminal process." *Hoffman v. Off. of the State*

---

[7] Plaintiff also accuses Howard of wrongly publicizing his name. These arguments can be quickly discarded as Plaintiff's name was publicly available under the Georgia Open Records Act and Plaintiff's arrest made pursuant to a warrant issued by a Superior Court Judge was a matter of public record as well. See, O.C.G.A. §§ 17-4-27; 15-18-72(a)(4). So, Howard did not "release" or "publicize" Plaintiff's name. That information was already a matter of public record.

*Att'y*, 793 F. App'x 945, 950 (11th Cir. 2019). Courts have held that DAs are entitled to absolute immunity even where prosecutorial misconduct was alleged. *Id.* For example, "filing information without investigation, filing charges without jurisdiction, filing a baseless detainer, offering perjured testimony, suppressing exculpatory evidence, and threatening further criminal prosecutions," are a few times misconduct was alleged yet the immunity applied. *Id.*

Thus, immunity turns on Mr. Howard's involvement in the initiation and pursuit of criminal prosecution. The most critical question for the Court is— when the allegations of misconduct are stripped away— what was the function of the prosecutor in each instance? Accepting Plaintiff's allegations as true, they amount to a condemnation of Mr. Howard's choices regarding the initiation of a criminal prosecution and his decisions about the criminal prosecution. (Doc. 1 ¶¶ 100-102; 170, 238, 244, 285).  These are quintessential prosecutorial functions, and each act is protected by absolute immunity. When stripped of the allegations of misconduct, the Complaint alleges that Mr. Howard "pressed forward to obtain criminal charges… without the benefit of a completed investigation," that he chose to seek arrest warrants "with essentially no investigation," or that he obtained arrest warrants "without meaningful investigation." Each of these allegations is concerned with Mr. Howard's decisions about the initiation and pursuit of a criminal prosecution— perhaps the most fundamental role of a prosecutor in the justice system. The Supreme Court and the Eleventh Circuit have both held that a prosecutor's decision about bringing a

prosecution lies at the heart of the prosecutorial function. See *Imbler* and *Rivera*, *supra*. The claim for false arrest relies on the same allegations about the initiation of the prosecution.

As to the claims for false arrest, Plaintiff alleges that Howard "knowingly withheld and misrepresented material and exculpatory facts with vitiated probable cause for arrest." (Doc. 1 ¶ 198). Here again, the decision about whether to prosecute is the textbook example of a prosecutorial function. And allegations that a prosecutor engaged in misconduct to initiate a prosecution is shielded by immunity. See *Hoffman*, 793 F. App'x at 950 (surveying cases in which prosecutorial misconduct was alleged but immunity applied).   It is also here that Plaintiff seeks to insert conclusory assertions to defeat prosecutorial immunity. In what may be the most absurd example, Plaintiff alleges that Howard was "acting as [a] criminal investigator[] making a decision whether or not to initiate criminal charges." (Doc. 1 ¶ 202).  Plaintiff also claims that Howard securing an arrest warrant was "outside the course and scope of his employment." (*Id.* ¶ 201). These conclusory assertions— naked attempts to try to defeat a Motion to Dismiss— are so incredible they warrant no serious analysis or consideration.

The ratification claim should also be dismissed under prosecutorial immunity since it relies on Howard having a DA's Office investigator and an assistant district attorney obtain arrest warrants. (*Id.* ¶¶ 225-227).  Again, acts quintessential prosecutorial duties.

The application of immunity is supported by the policy underlying prosecutorial immunity. The common-law immunity of a prosecutor is grounded in immunities for judges and grand jurors. *Imbler*, 424 U.S. at 422-23. "These include concern that harassment by unfounded litigation would cause a deflection of the prosecutor's energies from his public duties, and the possibility that he would shade his decisions instead of exercising the independence of judgment required by his public trust." *Id.* at 423.

> A prosecutor is duty bound to exercise his best judgment both in deciding which suits to bring and in conducting them in court. The public trust of the prosecutor's office would suffer if he were constrained in making every decision by the consequences in terms of his own potential liability in a suit for damages. Such suits could be expected with some frequency... [and] if the prosecutor could be made to answer in court each time such a person charged him with wrongdoing, his energy and attention would be diverted from the pressing duty of enforcing the criminal law... suits that survived the pleadings would pose substantial danger even to the honest prosecutor.

*Id.* at 424-425.

A prosecutor forced to defend his reasons for bringing a prosecution, "could impose unique and intolerable burdens upon a prosecutor responsible annually for hundreds of indictments and trials." *Id.* at 425-26. And while the Supreme Court recognized that some would be left without redress, the alternative would "disserve the public interest" and "would prevent the vigorous and fearless performance of the prosecutor's duty that is essential to the proper functioning of the criminal justice system." *Id.* at 427-28.

What can be deduced from these policy considerations? Most obvious is the Supreme Court's recognition that the policy underlying prosecutorial immunity is at its most muscular when a prosecutor decides whether to charge a person. The full weight of policy considerations establishes that a district attorney's absolute immunity is at its apex when he makes the choice of whether to charge a criminal defendant.

Simply put, the allegations that Plaintiff had to leave his apartment due to an arrest warrant being issued or that an arrest warrant was the basis for false arrest, are each part of the decision about whether to initiate a criminal prosecution. Thus, Plaintiff's fourth amendment and false arrest claims should be dismissed since Howard has absolute immunity for those decisions. Likewise, the ratification claim is also based on the decision to seek an arrest warrant. Thus, it too should be dismissed.

Even if prosecutorial immunity did not apply — which it does — each of Plaintiff's claims fails substantively as well.

### III.   42 U.S.C. § 1983 – UNLAWFUL SEIZURE UNDER THE FOURTH AMENDMENT

The Fourth Amendment states:

> The right of the people to be secure in their persons, houses, papers, and effects, *against unreasonable searches and seizures*, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

(emphasis supplied).

Plaintiff brings unlawful seizure claims in Counts One, Seven, Eight, and Ten, of which the latter two are conspiracy claims. Plaintiff alleges that Mr. Howard's decision to seek an arrest warrant, give his name publicly,[8] and discuss the case publicly, caused him to leave his home for safety reasons. (Doc. 1 ¶¶ 167-185). Plaintiff does not allege that Howard seized any property. Nor does Plaintiff allege that Howard forced him to leave his home or physically acquired any of his property. Rather, Plaintiff asserts that he was forced to leave his home because a mob of gang members controlled an area of town "a fifteen-minute drive miles [sic] away from Plaintiff's apartment," (*Id.* ¶ 173), and due to anonymous death threats. (*Id.* ¶ 171). Plaintiff claims that, for his safety, he made the decision to leave his home because of actions from people or groups that Howard had no control over. These allegations do not state a claim.

A violation of the Fourth Amendment requires "an intentional acquisition of physical control" over a plaintiff's property. *Corbitt v. Vickers*, 929 F.3d 1304, 1317 (11th Cir. 2019) (discussing *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989)). If an unintended person or thing is seized, "the detention or taking itself must be willful." *Id.* The Fourth Amendment does not address the accidental effects of otherwise lawful government conduct. *Id.* In other words, "a Fourth Amendment seizure does not occur whenever there is a governmentally caused termination of an individual's freedom of movement,

---

[8] Plaintiff had no expectation of privacy in his name, and it was publicly available after an incident report was written about the Brooks killing. Moreover, records of arrests (and the names of those arrested) are public records under Georgia law. See, O.C.G.A. §§ 17-4-27; 15-18-72(a)(4).

nor even whenever there is governmentally caused and <u>desired</u> termination of an individual's freedom of movement, but only when there is a governmental termination of freedom of movement <u>through means intentionally applied</u>." *Id.* (emphasis from original). Plaintiff must show that a seizure occurred "by the very instrumentality set in motion or put in place in order to achieve that result." *Id.*

What does this mean? It shows that Plaintiff cannot state a claim for an unlawful seizure unless the reason that Howard sought an arrest warrant or discussed the case publicly was an intentional mechanism to force Plaintiff out of his apartment. It also means that, since Howard never "intentional[ly] acqui[red] physical control" over Plaintiff's property, the claim is improper. Even accepting the allegations as credible, Plaintiff alleges precisely what the *Corbitt* and *Brower* courts specifically held not to be an unlawful seizure: accidental effects of government conduct. It would be disingenuous to allege that Howard's decision to seek an arrest warrant for the killing of Rayshard Brooks or his speaking about the case publicly was done intentionally to achieve the specific result of Plaintiff leaving his home because of "Blood gang members" and death threats from anonymous people. (Doc. 1 ¶¶ 171-174). Even accepting the Complaint as true, Howard cannot be liable for unintended consequences of seeking an arrest warrant and discussing a case publicly. Plaintiff has not stated a claim for unlawful seizure, and it should be dismissed. Howard also enjoys qualified immunity for this claim.

 **A.**  <u>**Howard is entitled to qualified immunity.**</u>

Qualified immunity shields government officials who perform discretionary functions from civil liability so long as their conduct does not violate any "clearly established statutory or constitutional rights which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). When case law is necessary to establish the right, only a decision of the Supreme Court, the Eleventh Circuit, or the highest court of the state in which the case arose will suffice to establish it. *Marsh v. Butler Cty.*, 268 F.3d 1014, 1032 n.10 (11th Cir. 2001) (en banc). "For qualified immunity to be surrendered, pre-existing law must dictate, that is, truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what defendant is doing violates federal law *in the circumstances*." *Lassiter v. Ala. A&M Univ.*, 28 F.3d 1146, 1149 (11th Cir. 1994) (en banc), overruled in part on other grounds, *Hope v. Pelzer*, 536 U.S. 730 (2002).

Defendant has been unable to locate case law from the Eleventh Circuit, the U.S. Supreme Court, or the Georgia Supreme Court that is remotely like this case. Thus, Howard did not violate clearly established law. There is no preexisting law that compels the conclusion that a district attorney seeking an arrest warrant or discussing a case publicly violates the Fourth Amendment rights of the person arrested. Nor is there established law that attaches liability if the person arrested is in fear of outside forces which the government does not control and leaves their home.

Another important factor is the civil unrest, riots, and civil disobedience that was occurring in Atlanta at the time of Rayshard Brooks' killing. As Plaintiff alleges,

"literally, Atlanta was burning and the National Guard had been deployed."[9] (Doc. 1 ¶ 176). There is no preexisting law that shows that a district attorney, publicly discussing an arrest of a police officer for the shooting of a black man as he ran from police — amid nationwide riots that were rooted in perceived police brutality against the black community — was a violation of Plaintiff's Fourth Amendment rights.  Thus, the claims against Howard should also be dismissed under qualified immunity.

### IV.    42 U.S.C. § 1983 – Reputational Liberty[10]

The claim for reputational liberty lacks any merit and is baseless under binding precedent. Plaintiff alleges that statements Howard made publicly were defamatory. But the Supreme Court has cautioned that the constitutional claim for reputational liberty is not a constitutional tort for defamation. That, however, is precisely what Plaintiff asks this Court to approve of: bringing a defamation claim disguised as a constitutional tort.

To establish this type of procedural due process claim, a plaintiff must show the deprivation of a liberty or property interest protected by the due process clause. *Board of Regents v. Roth*, 408 U.S. 564, 92 S. Ct. 2701 (1972). Allegations of injury to reputation alone do not support a § 1983 claim for violating due process. *Paul v. Davis*, 424 U.S. 693, 701, 96 S. Ct. 1155 (1976) (reputation alone does not implicate any "liberty" or

---

[9] Defendant asks that the Court take judicial notice of the civil disobedience, riots, violence, and mass protests that were occurring in Atlanta and around the nation in June 2020.
[10] Plaintiff appears to bring identical claims in Counts Two and Twelve.

"property" interest sufficient to invoke the procedural protections of the due process clause). The defamation must accompany a constitutionally recognized injury to due process. This rule is often labeled the "stigma-plus" standard. *Cypress Ins. Co. v. Clark*, 144 F. 3d 1435, 1436 (11th Cir. 1998).

The stigma-plus standard requires a plaintiff to show that the government official's conduct deprived the plaintiff of a previously recognized property or liberty interest apart from damaging the plaintiff's reputation. *Paul* at 712. The rule is designed to prevent the due process clause from becoming an all-purpose constitutionalizing of state tort law. *Id*. at 701. Plaintiff, without any explanation, alleges that he was deprived of "his interest in his chosen home and his residency in a particular locale, Atlanta." (Doc. 1 ¶ 190). It is not at all clear why Plaintiff alleges that these interests have been curtailed since Plaintiff is able to purchase any home he wishes and there is no prohibition against him living in Atlanta. In any event, termination of employment is the only recognized injury that Plaintiff has alleged that a reputational injury can attach to under stigma-plus. When reputational damage is sustained in connection with termination, it may give rise to a procedural due process claim for deprivation of liberty. *Campbell v. Pierce Cty.* Ga., 741 F. 2d 1342, 1344 (11th Cir. 1984).

The Eleventh Circuit has developed a six-factor test to determine whether a plaintiff has a due process claim for the deprivation of reputational liberty. *Warren v. Crawford*, 927 F. 2d 559, 565 (11th Cir. 1991). To recover, a plaintiff must show:

1)   a false statement;

2)   of a stigmatizing nature;

3)   attending a governmental employee's discharge;

4)   was made public;

5)   by the governmental employer;

6)   without a meaningful opportunity for an employee name-clearing hearing.

*Id.* The name-clearing hearing can be held either before or after the termination or publication of the defamation. *Harrison v. Wille*, 132 F. 3d 679, 683 n. 9 (11th Cir. 1998). Because Plaintiff does not meet the fifth and sixth elements of this test against Howard the claims for reputational liberty fail.

First, Plaintiff has not alleged that his termination from employment was the stigma-plus factor. This allegation, however, is required to state a claim under element three of the *Warren* test. Accepting that Plaintiff has tacitly made that allegation, the claim still fails as Plaintiff cannot satisfy the Eleventh Circuit's *Warren* test.

Howard was not Plaintiff's governmental employer, a requirement under the fifth element of the *Warren* test. Plaintiff, as an officer for the Atlanta Police Department, was an employee of the City of Atlanta. (Doc. 1 ¶ 7).  Howard is not an employee of the City of Atlanta; he was the elected district attorney for the Fulton Judicial Circuit.[11]

---

[11] Plaintiff alleges that DA Howard was "an employee of Fulton County." (Doc. 1 ¶ 12). As the Court is no doubt aware, this is patently false. An elected district attorney is a Constitutional Judicial Officer of the State of Georgia and is independent of any county or municipality. Ga. Const. of 1983, Art. VI, Sec. VIII.

(*Id.* ¶ 11). Howard's lawful duties did not include the exercise of any authority over Plaintiff's employment status as a police officer. *See generally*, O.C.G.A. § 15- 18-6. Under the stigma-plus test, the defamatory statements <u>must</u> be made "by the governmental employer". *Warren* at 565. Since Howard was not Plaintiff's employer, the fifth factor is not satisfied and the claim for reputational liberty fails.

Even if Howard could be considered Plaintiff's governmental employer, which he cannot, Plaintiff would still fail to state a claim because he was given an opportunity for a name clearing hearing. It is "only when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under § 1983 arise." *McKinney v. Pete*, 20 F. 3d 1550, 1557 (11th Cir. 1994). It is the state's failure to provide adequate procedures to remedy the otherwise procedurally flawed deprivation of a protected interest that gives right to a federal procedural due process claim. *Id*. The Eleventh Circuit recognized that the state must have the chance to "remedy the procedural failings of its subdivisions and agencies in the appropriate fora – agencies, review boards, and state courts" before being subjected to a claim alleging a procedural due process violation. This hearing can be held either before or after the termination or the publication of the defamation. *Harrison* at 683, n. 9.

Plaintiff readily admits that he had a name-clearing hearing before the Civil Service Board. (Doc. 1 ¶¶ 146-147). After the hearing, Plaintiff was reinstated to his position as a police officer. (*Id.*). Moreover, Plaintiff could have used state court to

argue for reinstatement to his job as well, which was yet another meaningful opportunity to clear his name. A hearing before the Civil Service Board and the ability to litigate the issue in state court are each meaningful opportunities for a name-clearing hearing; an opportunity which the Plaintiff has fully benefited from. Plaintiffs' claim for reputational liberty does not satisfy *Warren's* sixth element.

Because Howard was not Plaintiff's governmental employer and because Plaintiff was given a meaningful opportunity for a name-clearing hearing, Plaintiff has failed to state a claim for a deprivation of reputational liberty. The claims against Howard should be dismissed.

## A.   **Howard is entitled to Qualified Immunity.**

Accepting Plaintiff's allegations as true, there is no preexisting case law that would put Howard on notice that it is unconstitutional for a district attorney to discuss a case publicly because it could lead to Plaintiff somehow being unable to live in his chosen home or in Atlanta. Qualified immunity is particularly applicable since Plaintiff has a right to live in the home of his choosing and can reside within Atlanta. Thus, Howard is entitled to qualified immunity for this claim as well.

## B.   **The reputational claim is barred by the statute of limitations.**

Federal courts apply their forum state's statute of limitations for claims brought pursuant to 42 U.S.C. § 1983. *Porter v. Ray*, 461 F.3d 1315, 1323 (11th Cir. 2006). Under Georgia law, claims alleging injury to reputation have a one-year statute of limitations. O.C.G.A. § 9-3-33. Thus, Plaintiff's claim for reputational liberty is barred as the

allegedly offending conduct occurred in June 2020. (Doc. 1 ¶ 18). Plaintiff did not bring suit until June 2022, two years after the incident and a year after the statute of limitation expired. The claim is barred and should be dismissed.

## V.      FALSE ARREST UNDER STATE AND FEDERAL LAW

False arrest (a term of art for unlawful seizure) is an allegation of "detention without legal process." *Wallace v. Kato*, 549 U.S. 384, 389 (2007). When arrest is pursuant to a form of legal process, such as a warrant issued by a court, a cause for false arrest or unlawful seizure is not proper. Plaintiff's claim for false arrest under state law and under the Fourth Amendment alleges that Howard is liable for securing an arrest warrant without sufficient probable cause. (Doc. 1, ¶¶ 198-210). Thus, Plaintiff concedes that the arrest was pursuant to a warrant issued by Fulton County Superior Court Judge Rebecca Reider. (*Id.* ¶ 114). Since Plaintiff was arrested pursuant to an arrest warrant—a valid form of legal process—the false arrest claims fail. *Wallace* at 390. Even if the claims were viable, they would still fail as both are subject to a prosecutor's absolute immunity.

A prosecutor's decision whether to prosecute lies at the heart of the prosecutorial function. *Hart v. Hodges*, 587 F.3d 1288, 1295 (11th Cir. 2009). The Eleventh Circuit has repeatedly stated that a prosecutor "cannot be held liable for initiating and continuing prosecutions against the plaintiffs, even assuming he lacked probable cause at the outset and pursued the prosecutions after receiving overwhelming exculpatory information." *Id.* Plaintiffs seek to hold Howard liable for actions he took in his role as

government advocate: initiating and pursuing a prosecution. That Plaintiffs allege that he acted without probable cause and with malice does not dilute Howard's immunity. *Hart* at 1298; see also, *Jackson v. Capraun*, 534 Fed. Appx. 854, 859 (11th Cir. 2013) (prosecutor entitled to absolute immunity for initiating prosecution even if he did so with malicious intent).

Plaintiff's claim for false arrest must fail. "[W]hen detention is pursuant to a form of legal process, such as a warrant, a cause of action for false arrest… is improper." *Smith v. Hatcher*, Civil Action No. 2:19-CV-167, 516 F. Supp. 3d 1369, 1374 (S.D. Ga. Jan. 19, 2021). Here, Howard sought and obtained an arrest warrant from a Superior Court Judge. Plaintiff's claim for false arrest is improper and cannot be maintained against Howard. Even if it were proper, Howard would still be immune for initiating a prosecution.

## VI.   CIVIL CONSPIRACY

In Counts Eight and Ten, Plaintiff claims that Howard conspired with Donald Hannah, an investigator and the DA's Office, Clint Rucker, an assistant district attorney, and Mayor Bottoms. (Doc. 1 ¶¶ 243-247; 285-287). Plaintiff alleges that the conspiracy was to deprive him of his right to be free from unreasonable search and seizure and for depriving Plaintiff of life, liberty, or property. (*Id*.). Both claims relate only to the allegations that Howard pursued a prosecution without probable cause and without a thorough investigation.

As explained below, a DA, an investigator at the DA's Office, and an assistant district attorney cannot conspire with each other under the intracorporate conspiracy doctrine. But even if they could conspire, these claims are barred by prosecutorial immunity. Indeed, "[i]t would be cold comfort for a prosecutor to know that he is absolutely immune from direct liability for actions taken as prosecutor, if those same actions could be used to prove him liable on a conspiracy theory involving conduct for which he was not immune." *Rowe v. Ft. Lauderdale*, 279 F.3d 1271, 1282 (11th Cir. 2002).

As stated in the prior section, Howard's decision to initiate and prosecute lies at the heart of the prosecutorial function. That Plaintiff alleges the decision to initiate a prosecution was a conspiracy does not vitiate a prosecutor's absolute immunity. *Elder v. Athens-Clarke Cty., Ga.*, 54 F.3d 694, 695 (11th Cir. 1995) (holding that the allegation that the prosecutor's actions "is part of a conspiracy does not in any manner dilute immunity."). Thus, Plaintiff's conspiracy claims both fail because Howard has prosecutorial immunity.

A. **Plaintiff's Claims Are Barred Under the Intracorporate Conspiracy Doctrine.**

"Under the intracorporate conspiracy doctrine, a corporation's employees, acting as agents of the corporation, are deemed incapable of conspiring among themselves or with the corporation." *Dickerson v. Alachua Cnty. Comm'n*, 200 F.3d 761, 767 (11th Cir. 2000). The Eleventh Circuit has repeatedly held that the doctrine applies to

governmental entities. *Dickerson* at 767-68; *Chambliss v. Foote*, 562 F.2d 1015 (5th Cir. 1977). "The reasoning behind the intracorporate conspiracy doctrine is that it is not possible for a single legal entity...to conspire with itself, just as it is not possible for an individual person to conspire with himself... [t]his doctrine has been applied not only to private corporations but also to public, government entities." *Dickerson* at 767; *Grider v. City of Auburn*, 618 F.3d 1240, 1261 (11th Cir. 2016).

Plaintiff acknowledges the obvious in his Complaint: that the district attorney, assistant district attorney, and investigator for the district attorney, are all members of the same entity, the Fulton Judicial Circuit's District Attorney's Office. (Doc. 1 ¶¶ 11, 13, 15). Since all three Defendants are members of the DA's Office, the conspiracy claims are barred under the intracorporate conspiracy doctrine.

**B. Because plaintiff's due process claims fail substantively, there is no liability for a conspiracy regarding the same conduct.**

As detailed above, Plaintiff's claims for a Fourth Amendment seizure claim, a false arrest claim, and a due process claim have no basis. Well-settled law supports the dismissal of each of those claims. And Howard is entitled to absolute prosecutorial immunity for each claim. Howard is also entitled to qualified immunity. In short, since each of the claims underlying the purported conspiracies fail, Plaintiff cannot maintain a conspiracy action. Counts Eight and Ten should be dismissed under one or all of these arguments.

**C.      Plaintiff's allegations of a conspiracy lack plausibility.**

When alleging a conspiracy, "[m]ore than mere conclusory notice pleading is required." *Fullman v. Graddick*, 739 F.2d 553, 556 (11th Cir. 1984). "It is not enough to simply aver in the complaint that a conspiracy existed." *Id.* at 557. "Conclusory allegations of agreement or conspiracy are insufficient." *Quality Auto Painting Ctr. Of Roselle v. State Farm*, 917 F.3d 1249, 1262 (11th Cir. 2019).

Plaintiff's allegations of conspiracy are prime examples of the type of conclusory, unsupported allegations the Supreme Court has held not to support a claim. See, e.g., *Iqbal* and *Twombly*, *supra*.  Plaintiff merely alleges that the Defendants' conspired "to deprive Plaintiff of his constitutional rights…" (Doc. 1 ¶ 243). Plaintiff never explains in Counts Eight or Ten specifically how he was deprived of a constitutional right due to a conspiracy. The only possible acts that Howard, assistant district attorney Rucker, and investigator Hannah had in common was obtaining an arrest warrant. Again, all three Defendants have absolute immunity for the initiation of a prosecution.

In sum, Plaintiff's conspiracy claims should be dismissed for multiple, independent reasons. Whether for prosecutorial immunity, failure of the underlying substantive claims, or the lack of plausibility, the conspiracy claims are untenable and should be dismissed against Howard.

**VII.   RATIFICATION**

O.C.G.A. § 51-1-12 states:

> By ratification of a tort committed for his own benefit, the
> ratifier becomes as liable as if he had commanded that it be

committed. A person ratifying a tort does not become liable, however, if the act was done for the benefit of a third person.

To begin, since the underlying "torts" this claim relies on each fail, Howard could not have ratified any torts. Second, the "tortious" acts that Plaintiff alleges that Howard ratified concern <u>only</u> the decision to seek an arrest warrant. Thus, the acts that Plaintiff complains of has the strongest protections available under the prosecutorial immunity doctrine: those acts done to initiate a prosecution. Howard is therefore immune from this claim. Even if he were not, the claim would still fail.

Ratification is a business tort that is used to hold masters liable for the acts of a servant. The act allegedly ratified must be directly connected to the employer's business. The act must be "done on behalf of the person adopting it and attempting to ratify it." *Medley v. Boomershine Pontiac-GMC Truck Inc.*, 214 Ga.App. 795, 798 (1994). Moreover, Howard must gain some ascertainable benefit from the investigator and assistant district attorney's obtaining an arrest warrant. Plaintiff's only allegation of gain is amorphous, claiming that Howard sought "political gain and advancement of his career." (Doc. 1 ¶ 224).

A business tort does not apply to a governmental entity. Even if it were, however, the decision to obtain an arrest warrant conferred no ascertainable benefit on Howard. Nor was it done on his behalf. A district attorney brings charges on behalf of the people of Georgia to enforce state law. Criminal charges are brought for society's benefit, not for a prosecutor's.

The claim for ratification is untenable for three reasons: the underlying torts have no substantive basis, the claim does not apply to the allegations, and finally, claims associated with the initiation of a criminal prosecution enjoy absolute immunity. The claim should be dismissed.

## CONCLUSION

For the reasons stated, each claim against Howard should be dismissed.

Respectfully submitted this 9th day of September, 2022.

HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Defendant Howard*

3017 Bolling Way NE, Suite 129
Atlanta, Georgia 30305
(404) 841-1275
ngreen@henefeldgreen.com

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), this is to certify that the foregoing has been prepared using Book Antiqua 13-point font in compliance with Local Rule 5.1.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION**

GARRETT ROLFE,                       §
                                     §
    *Plaintiff,*                      §
                                     §
v.                                   §        Civil Action No. 1:22-cv-02339-MHC
                                     §
PAUL HOWARD et al.                   §
                                     §

## CERTIFICATE OF SERVICE

I hereby certify that on this day I electronically filed **Defendant Howard's Motion to Dismiss and Brief in Support** with the Clerk of Court using the CM/ECF system which will automatically send email notification of such filing to all counsel of record.

    This 9th day of September, 2022.

HENEFELD & GREEN, P.C.

/s/ Noah Green
Noah Green
Georgia Bar No. 468138
*Attorney for Defendant Howard*

3017 Bolling Way NE, Suite 129
Atlanta, Georgia 30305
(404) 841-1275
ngreen@henefeldgreen.com